IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * |
| | *   CRIMINAL NO. TDC-20-414 |
| SARAH GEDDES HOLMES, | * |
| | * |
| Defendant. | * |
| | * |
| | * |

\*\*\*\*\*\*\*

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorneys, hereby submits the Government's Memorandum in Aid of Sentencing for Sarah Geddes Holmes.[1]  Defendant Sarah Geddes Holmes ("Holmes") is scheduled to be sentenced on October 27, 2021, at 11:00 a.m.  For the reasons set forth below, the Government submits that a sentence at the **low end of the Guidelines, followed by 5 years of supervised release**, is a sentence sufficient but not greater than necessary to satisfy the goals of sentencing.

**I.   Background**

On November 23, 2020, Holmes was charged via information with one count of Embezzlement from a Labor Organization, in violation of 29 U.S.C. § 501(c), and one count of Bank Fraud, in violation of 18 U.S.C. § 1344.  (ECF No. 1.)  Pursuant to a written plea agreement, the Defendant pled guilty to the two counts in the information on December 3, 2020.  (ECF No. 6 ("Plea").)  After accepting the Defendant's plea to the two counts and adjudging her guilty, the

---

[1] Sentencing memorandum in this matter were due on October 13, 2021.  (ECF No. 21.)  Counsel for the Government was the duty Assistant U.S. Attorney for the week that the sentencing memorandum were due and was unable to timely file the sentencing memorandum.  Counsel for the Government respectfully requests the Court accept this late filed sentencing memorandum.

Court scheduled sentencing for March 4, 2021,[2] and directed the U.S. Probation Office ("Probation") to prepare the Pre-Sentence Investigation Report ("PSR"), which was filed on January 29, 2021. (ECF No. 12 ("PSR").)

In the plea agreement, the parties agreed that the base offense level was **6** as to Count 1 (Embezzlement from a Labor Organization) pursuant to the United States Sentencing Guidelines ("U.S.S.G.," the "Guidelines," or the "Sentencing Guidelines") § 2B1.1(a)(2). (Plea ¶ 6(a).) A **12**-level increase applied because the amount of loss involved in the offense was more than $250,000 but not more than $500,000. (*Id.* ¶ 6(b).) Additionally, a **2**-level increase applied because the Defendant occupied a position of public or private trust. (*Id.* ¶ 6(c).) Regarding Count 2 (Bank Fraud), the base offense level was 7 pursuant to U.S.S.G. § 2B1.1(a)(1). (*Id.* ¶ 6(d).) A similar **12**-level increase applied because the amount of loss involved in the offense was more than $250,000 but not more than $500,000 and a **2**-level increase applied because the Defendant occupied a position of public or private trust. (*Id.* ¶¶ 6(e)-(f).) Because the two counts group since they involve two or more acts or transactions connected by a common criminal objective, the total offense level is **21**. (*Id.* ¶ 6(g).) The Government did not oppose a **2**-level reduction for acceptance of responsibility, and the Government agreed to move for an additional **1**-level reduction at sentencing in recognition of the Defendant's timely notification of his intention to enter a plea of guilty. (*Id.* ¶ 6(h)). The final offense level is therefore **18**. Probation's calculation of the offense level is in line with the plea agreement. (PSR ¶¶ 17-28.) The parties did not reach agreement as to the Defendant's criminal history. The Government agrees with Probation's calculation that the

---

[2] Based on three consent motions by the Defendant, the sentencing was rescheduled to October 27, 2021, at 11 a.m. (ECF No. 21.)

Defendant's criminal history score is **0** and her criminal history category is therefore **I**. The Guidelines prescribe a sentence in the range of 27 months to 33 months.

## II.     Legal Standard

In *United States v. Green,* 436 F.3d 449 (4th Cir. 2006), the Fourth Circuit held that after *United States v. Booker,* 543 U.S. 220 (2005), which made the Sentencing Guidelines effectively advisory, the district court is commanded to fulfill congressionally established objectives for sentencing set out in 18 U.S.C. § 3553(a): promoting respect for the law; providing just punishment for the offense; affording adequate deterrence; protecting the public from further criminal activity of the defendant; providing the defendant training, medical care, and correctional treatment; and providing restitution to victims. *See Green,* 436 F.3d at 455; *see also United States v. Moreland,* 437 F.3d 424, 432 (4th Cir. 2006).

Thus, in conducting a sentencing, district courts must (1) calculate the sentence range recommended by the Sentencing Guidelines; (2) determine whether a sentence within that range and within statutory limits serves the statutory sentencing factors set out in 18 U.S.C. § 3553(a) and, if not, select a sentence that does serve those factors; (3) implement mandatory statutory limitations; and (4) articulate the reasons for selecting the particular sentence, especially explaining why a sentence outside of the Sentencing Guidelines range better serves the relevant statutory sentencing purposes. *See Green,* 436 F.3d at 455-56; *Moreland,* 437 F.3d at 432. The explanation of a variant sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary. *See Green,* 436 F.3d at 455-56; *United States v. Perez-Pena,* 453 F.3d 236, 241 (4th Cir. 2006). The district court is given "some latitude," and "a degree of deference," to tailor a particular sentence to the circumstances. *Green,* 436 F.3d at 456-57; *Moreland,* 437 F.3d at 433.

**III.     Relevant Sentencing Considerations Under 18 U.S.C. § 3553(a)**

For a little over three years, the Defendant used her position as Secretary-Treasurer of Local 24 to embezzle hundreds of thousands of dollars from Local 24's bank account. These funds were dues paid by members of Local 24 in order for the union function. Local 24 trusted the Defendant. They provided her with sole control of the checkbook for the union's bank account. The Defendant used this position of trust to hide her embezzlement—writing checks to herself, forging signatures, and altering checks and accounting software to hide her fraud.

The Defendant's three-year embezzlement scheme was a gradual escalation. In 2015, the Defendant deposited eight Local 24 checks that she wrote to herself. These checks were spread out between May and November 2015. In 2016, the Defendant's embezzlement rose significantly. The Defendant deposited fifty-two checks from Local 24's bank account, which the Defendant made out to herself. Each month, the Defendant regularly deposited checks for thousands of dollars—each check an embezzlement of the dues paid by Local 24's members. In 2017, the Defendant's embezzlement reached its height. The Defendant negotiated sixty-two checks written from Local 24's bank account. Finally, in 2018, until the Defendant was caught in June 2018, the Defendant negotiated thirty-eight checks from the union's bank account. In total, the Defendant embezzled a little less than $300,000 from Local 24.

The Defendant went to great lengths and used a variety of methods to hide her embezzlement. In a vast majority of the instances, the Defendant wrote checks to herself, signed only by herself. This was a violation of Local 24's bylaws. The Defendant also forged the signature of the President of Local 24 on twenty-two checks. Local 24 used accounting software to keep track of how its members' dues were being used by the union. As the union was required to file annual financial reports with the U.S. Department of Labor, the accounting software was

integral to the accuracy of these reports.  As the Secretary-Treasurer, the Defendant was the only individual with access to the accounting software.  The Defendant used a multitude of ways to conceal her embezzlement—and she did this repeatedly over the three-year span.  The Defendant would make checks that she wrote to herself appear (i) to be for a legitimate purpose; (ii) to be of a lower amount than what she had embezzled; and (iii) to be for a different payee.  The Defendant manipulated Local 24's accounting software on thirty-three occasions to obtain fraudulent checks.

The Defendant's manipulation of the accounting software ensured that when the union's books were audited, the Defendant's embezzlement and the rapidly depleting funds in Local 24's bank account would not come to light.  The Defendant's criminal conduct caused the International Association of Machinists and Aerospace Workers' Grand Lodge Auditor to fill out annual reports for the U.S. Department of Labor that were false.  The Defendant signed each of these false reports—in 2015, 2016, and 2017.

The repeated and consistent nature of the Defendant's embezzlement, as well as the great lengths the Defendant went to in order to hide her crime, evidences that this was no momentary lapse in judgment.  The Defendant knew what she was doing was wrong and she knew that she needed to hide it so that she could continue to engage in her embezzlement.  And continue she did, until she was caught in June 2018.  The victims in this case were not only the union—Local 24—but also each individual dues paying member of the union that had their hard-earned money embezzled by the Defendant.  These dues were intended for bargaining with employers, litigating grievances, and providing administrative support for Local 24.  Instead of being put to such legitimate uses, the Defendant embezzled a significant portion of the funds and took every step along the way during the three-year period to hide her criminal conduct.  Moreover, the Defendant used her position of trust within the union as Secretary-Treasurer to conduct her embezzlement

and hide her criminal conduct for these three years. The union trusted the Defendant with its checkbook, its bank account, and its records—its financial health. The Defendant returned that trust by engaging in a long-running fraud. The nature and circumstances of the offense show the seriousness of the Defendant's conduct and the need for a serious sentence to reflect this crime.

It is clear based on the Defendant's bank records that the Defendant used the embezzled funds to pay for her personal purchases, and in large portion, to feed a gambling habit. In December 2017 and April 2018, the Defendant transferred $5,000 and $25,000 of her own money into Local 24's bank account. Though the Defendant may have returned approximately 10% of the close to $300,000 she stole, she continued to embezzle union funds during and after she made these deposits. Still, when confronted with her embezzlement, the Defendant made a full and complete confession. The Government is heartened by the Defendant's choice to seek help while on pretrial release, including her continued participation in Gamblers Anonymous. The Government hopes that the Defendant continues to take these positive steps and that this conviction has been the necessary deterrent for this Defendant, such that she is unlikely to fall back on her criminal behavior and the public does not need protection from any future crimes of hers.

Nonetheless, in order to appropriately reflect the seriousness of the offense, to provide just punishment for the offense, and to promote respect for the law by ensuring general deterrence, the Government submits that a period of incarceration is appropriate in this case. The Defendant engaged in a concerted scheme to embezzle a little less than $300,000 through 160 separate transactions spread out over three years. The damage from the Defendant's criminal conduct was felt by the union and its dues paying members. The Defendant's ability to hide her wrongdoing from her position of trust as Secretary-Treasurer resulted in more than just the loss of money. The union lost its reputation with its own members and with the Department of Labor as well, where

the union filed false annual reports. Just punishment for this serious offense requires a term of imprisonment—one that home detention will not adequately accomplish. *See* U.S.S.G. § 5C1.1(f) (stating that "[i]f the applicable guideline range is in Zone D of the Sentencing Table," which is the case here, "the minimum term shall be satisfied by a sentence of imprisonment" and not home detention.) To those who contemplate taking the same criminal path chosen by this Defendant, a sentence that includes a time of imprisonment will unequivocally demonstrate that such criminal behavior will be met with serious consequences.

Accordingly, the Government submits that a sentence at the low end of the Guidelines is sufficient, but not greater than necessary in light of the nature and circumstances of this offense, the seriousness of the offense, the need to promote respect for the law and to provide adequate deterrence.

### IV.     COVID-19

The Defendant has not spent a day in prison for this crime—having been on pretrial release since her initial appearance in this case. As the Defendant notes in her sentencing memorandum, she is currently fully vaccinated. At sixty-six years old, the Defendant is potentially eligible for a COVID-19 vaccine booster shot. Should the Court determine that a term of imprisonment is appropriate in this case, the Defendant's reporting date can be set at approximately sixty days. This will give the Defendant approximately two months to obtain a booster shot. Barring this, the Defendant cannot capitalize on the fact that COVID-19 breakthrough infections exist in relatively miniscule numbers and generic arguments of harm to argue for a sentence inconsistent with the § 3553(a) factors. Out of 187 million people in the United States who are fully vaccinated, as of October 12, 2021, 31,895 patients who were fully vaccinated have contracted COVID-19 and been

hospitalized or died.[3]  To put that in context, this number represents only 0.017% of the hundreds of millions of people who have been fully vaccinated.  If there is a time and place where COVID-19 breakthrough infections demonstrably affect the Defendant's incarceration or health, the Defendant can always move for compassionate release to the extent there is such a basis for her to argue for release on that ground.

## V.    Forfeiture Judgment and Restitution

The Government asks the Court to incorporate the motion for forfeiture of property and preliminary order of forfeiture, filed on March 14, 2021, into the sentencing proceeding.  (ECF No. 15.)  Pursuant to the parties' plea agreement, the Defendant has agreed to the entry of a restitution judgment for the full amount of the victim union's losses. The amount of the victim union's losses is $264,585.18 and the Government asks the Court to order this in restitution.  Due to Local 24's significant monetary losses and the anticipated restitution to be ordered in this case, the Government requests the maximum 5-year term of supervised release to ensure restitution payments.

---

[3] *See* COVID-19 Breakthrough Case Investigations and Reporting, Centers for Disease Control and Prevention, https://www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html (last visited October 15, 2021).

**VI.** **Conclusion**

For the foregoing reasons, and additional information that may be presented at the sentencing hearing, the Government respectfully submits that a sentence at the **low end of the Guidelines, followed by 5 years of supervised release**, is sufficient but not greater than necessary to meet the purposes of sentencing as enumerated in the § 3553(a) factors.

Respectfully submitted,

Erek L. Barron
United States Attorney

By: \_\_\_\_/s/_____
Rajeev R. Raghavan
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was filed electronically on October 15, 2021, and thus served upon defense counsel.

/s/
Rajeev R. Raghavan
Assistant United States Attorney